IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JESSICA N. DORITY                                                    PLAINTIFF


        v.                            CIVIL NO. 2:19-CV-2048


ANDREW M. SAUL,[1] Commissioner,
Social Security Administration                                      DEFENDANT


### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Jessica Dority, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for child disability insurance benefits (CDIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff protectively filed her current applications for CDIB and SSI on September 1, 2016, alleging an inability to work since February 26, 2015,[2] due to sleep apnea, learning disability, protruding disc in lower back, depression, difficulty comprehending, high blood

---

[1] Andrew M. Saul, has been appointed to serve as Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

[2] At the hearing before the ALJ on September 12, 2018, Plaintiff amended her alleged onset date from May 15, 2010, to February 26, 2015.  (Tr. 45).  However, the Court notes that the ALJ continued to refer to the relevant time period as May 15, 2010, through October 2, 2018, the date of the decision. (Tr. 18, 28).

pressure, weight issues, trouble walking, and leg pain.  (Tr. 45, 80-81, 97-98, 113-114, 133, 152, 169).  An administrative hearing was held on September 12, 2018, at which Plaintiff appeared with counsel and testified. (Tr. 45-68).

By written decision dated October 2, 2018, the ALJ found Plaintiff had not attained the age of 22 as of the original alleged onset date. (Tr. 18).  The ALJ found Plaintiff had not engaged in substantial gainful activity since May 15, 2010, the original alleged onset date. (Tr. 18). The ALJ found Plaintiff had the following severe impairments: hypertension; herniated nucleus pulposus at L4-L5; chronic low back pain syndrome status post lumbar epidural steroid injection; obesity; depression; and anxiety. (Tr. 18). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 18). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except Plaintiff, who is functionally illiterate, could perform jobs involving simple tasks and simple instructions involving only incidental contact with the public; she could not climb; and she could only occasionally bend, stoop, and/or squat. (Tr. 23). With the help of a vocational expert, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as a table worker/inspector, an addresser, and a document preparer.  (Tr. 28).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on February 11, 2019.  (Tr. 1-6).  Plaintiff filed a Petition for Judicial Review of the matter on April 15, 2019.  (Doc. 1).  Both parties have submitted

briefs, and this case is before the undersigned for report and recommendation. (Docs. 11, 12).

The Court has reviewed the transcript in its entirety. The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

## II.    Evidence Submitted:

At the September 12, 2018, hearing before the ALJ, Plaintiff testified that she was born on August 23, 1992. (Tr. 45). She testified that she required special education classes in grade school; however, she was able to complete high school. (Tr. 46). Testimony shows that Plaintiff had only worked a couple of jobs, each only lasting a day or two, which did not rise to the level of substantial gainful activity. (Tr. 49).

The record also contains records from Plaintiff's school, which are prior to the relevant time period. The school records include 2008 IQ testing scores, administered by school officials, reflecting that Plaintiff had a verbal IQ score of 76, a performance IQ score of 75, and a full-scale IQ score of 74. (Tr. 751). Rhonda Bryant, the resource teacher, noted that Plaintiff's 2008 scores showed mild to vast improvement over the past three to nine years. (Tr. 1063). Ms. Bryant also stated that Plaintiff was doing well in her general education classes and that she had maintained good grades due to her good work ethic and determination, with only mild to moderate modifications. (Tr. 1064).

From the time period of May 25, 2010, through February 25, 2016, Plaintiff was treated for tonsillitis (Tr. 1176); migraine headaches (Tr. 1178); right foot pain (Tr. 1179); gastroenteritis (Tr. 1182); no menstrual cycle (1183); morbid obesity, including failure to

keep her appointment with a nutritionist and failure to change her diet or exercise habits (Tr. 1183, 1185); upper respiratory infection (Tr. 1187); left ear infection (Tr. 1188, 1231); allergic rhinitis (Tr. 1188); and dental pain (Tr. 1229).

Plaintiff was seen at Mercy Clinic on February 26, 2015, for low back strain and knee pain. (Tr. 1228).

On November 20, 2015, Plaintiff was seen at Mercy Clinic for a cough. (Tr. 1225). Dr. Vera Collins instructed her to use an inhaler. (Tr. 1227).

On April 5, 2016, Plaintiff underwent a Diagnostic Evaluation by Barbara Davis, LPC. (Tr. 1155-1158). Plaintiff reported that she had been teased her "whole life" about her weight and was very self-conscious about going out in public. (Tr. 1155). Plaintiff reported living with her parents, not working, and spending most days on the couch eating. Plaintiff reported completing the 12th grade, but with some special education classes. Her last employment was as a housekeeper, and she quit after three hours because of issues with her weight and mobility. (Tr. 1155). Plaintiff reported that her hobbies included using her phone and her computer. (Tr. 1156). She also used to enjoy playing basketball and playing with her nieces, but she was unable to keep up with them now. Evaluation notes indicate Plaintiff used smokeless tobacco and had never had outpatient, inpatient or mental health medication. (Tr. 1156). Mrs. Davis noted her insight and judgment were fair; her mood calm; her affect appropriate; and her behavior cooperative. (Tr. 1157). She also noted signs of depression. (Tr. 1157). Mrs. Davis recommended individual therapy and pharmacologic management, with a treatment objective of learning how to live on her own and function as a normal adult. (Tr. 1158). Plaintiff was assessed with major depressive disorder. (Tr. 1159).

On April 15, 2016, Plaintiff presented at Mercy Clinic with a history of obstructive sleep apnea, bilateral hip pain, low back pain, and elevated blood pressure. (Tr. 1190). Julie Greek, APRN, discussed at length with Plaintiff the importance of exercise and dietary changes to prevent further deterioration due to morbid obesity. (Tr. 1193). Weight management options were also discussed. Plaintiff's tobacco dependence was also noted. (Tr. 1194). Plaintiff's hip and lumbar spine x-ray were normal. (Tr. 1196). Plaintiff's MRI of her lumbar spine showed a dominant abnormality of a large severe focal disc protrusion/herniation at L4-5 with resultant severe central stenosis; a small to moderate central disc protrusion/herniation with caudal migration at L3-4; and a mild central disc protrusion/herniation at L5-S1 without significant central stenosis. (Tr. 1198).

On June 6, 2016, Plaintiff was seen at Mercy hospital for a sleep study, which showed severe sleep apnea. (Tr. 1167-1168).

On June 29, 2016, Nurse Greek at Mercy Clinic noted Plaintiff's complaints of back pain and cough. (Tr. 1219). Plaintiff was assessed with hypertension, bilateral hip pain, chronic bilateral low back pain with sciatica, restless legs, left leg pain, and morbid obesity. Her cough was due to allergies. Plaintiff was encouraged to start walking for exercise, to start watching her diet again, and to discontinue tobacco use. (Tr. 1220).

A July 7, 2016, Plaintiff was seen at Mercy Hospital for her chronic bilateral low back pain with bilateral sciatica. (Tr. 1566). Her lumbar spine MRI showed a dominant abnormality of a large severe focal disc protrusion/herniation at L4-5 with resultant severe central stenosis; a small to moderate central disc protrusion/herniation with caudal migration at L3-4; and a mild central disc protrusion/herniation at L5-S1 without significant central stenosis. (Tr. 1262).

On August 2, 2016, Plaintiff saw Dr. David Knox for complaints of low back pain. (Tr. 1256). Dr. Knox recommended a steroid injection and made a referral to pain management. (Tr. 1256). Plaintiff's x-ray showed a "severe list to the right with a tilt at 4 on 5 with rather severely compromised films due to patient's large size." Dr. Knox was unable to define any evidence of overt instability on flexion and extension views. There was no evidence of compressive vertebral body abnormality. (Tr. 1263).

On August 29, 2016, Plaintiff saw Dr. Thomas Cheyne low back, left hip and left leg pain, but with right leg pain at a much lesser degree. (Tr. 1203). Dr. Cheyne noted that she was not a candidate for surgery because of her weight and that he was seeing her for further evaluation and conservative care. (Tr. 1203). He concluded that Plaintiff suffered from bilateral sciatica with large disc herniation. He opined she needed to be referred back to her primary care physician for weight loss surgery. He prescribed another steroid pack, which had improved her symptoms, and Meloxicam; he suggested hot showers twice a day; and he recommended staying at light activity. (Tr. 1206). A lumbar epidural steroid injection was also dministered. (Tr. 1217).

On October 4, 2016, Plaintiff returned to Dr. Knox for her low back pain. (Tr. 1265). Dr. Knox noted that Plaintiff had improved since her last evaluation and that her low back symptoms seemed to be resolving somewhat. Because of her weight, surgery was still not an option. Due to some swelling and tenderness in her left thigh, Plaintiff had venous Doppler imaging, which showed deep vein phlebitis and thrombophlebitis on her lower left and right extremity. She was also assessed with sciatica of the left side and right side and a lumbar herniated disc. (Tr. 1266).

6

Plaintiff underwent a second steroid injection in her lumbar spine on November 15, 2016. (Tr. 1268).

On November 22, 2016, Plaintiff was seen at Mercy Hospital for complaints of chest pain that began while she was talking on her cell phone. (Tr. 1371). Hospital records highlighted her obesity and use of smokeless tobacco; however, her pain was determined to be caused by muscle spasms in the mid to upper thoracic region, on the left more so than the right, and with tenderness that corresponded to the same area in the anterior chest. (Tr. 1371-1372). She was diagnosed with chest pain that was musculoskeletal. (Tr. 1374).

Plaintiff returned to Dr. Cheyne on December 5, 2016, for a follow up of her herniated disc ion with bilateral sciatica. Dr. Cheyne observed that Plaintiff was doing better since her injection and her Medrol Dosepak, and at times, she had no pain at all. She was scheduled for an additional steroid injection and they discussed activity level, treatment options, and diet. (Tr. 1275).

On December 22, 2016, Plaintiff was seen at Mercy Hospital for a cough and was treated for acute maxillary sinusitis. (Tr. 1375-1378).

On January 11, 2017, Plaintiff underwent a Mental Diagnostic Evaluation and Intellectual Assessment by Kristen Eckelhoff, Psy.D. (Tr. 1284). Plaintiff's mother accompanied her to the appointment. Plaintiff and her mother reported Plaintiff's experience with depression dating back to her childhood when she was bullied. She had other symptoms of depression, such as crying, withdrawing, isolating. She reported being an emotional eater. Plaintiff's mother reported that she had difficulty with three-step instructions and with comprehending certain things she was told to do. (Tr. 1284). Ms. Eckelhoff's report noted

that Plaintiff had not been hospitalized for psychiatric issues; that she had tried outpatient therapy; and that she was not currently participating in any mental health treatment. (Tr. 1284). Ms. Eckelhoff's report noted that Plaintiff had never taken psychiatric medication and that Plaintiff did not like the therapist she was seeing and did not return. (Tr. 1285). Plaintiff was cooperative, but deferred to her mother to answer some questions; her mood was "okay;" she smiled often but in a nervous way; she had no trouble communicating; her speech was logical and relevant; she showed no signs of experiencing any delusions; she denied hallucinations; and she was alert and fully oriented but showed symptoms of cognitive defects. (Tr. 1285-1286). Ms. Eckelhoff's testing notes showed that Plaintiff's individual educational and developmental history was consistent with a diagnosis of Intellectual Disability and that she showed deficits in adaptive functioning consistent with Intellectual Disability. (Tr. 1287). Her full-scale IQ score fell in the mild intellectual disability range of functioning; however, testing showed good mental control. Ms. Eckelhoff stated that she thought Plaintiff could be successful at unskilled work and that her anxiety and depression could be alleviated through therapy and medication. (Tr. 1287). Plaintiff was diagnosed with anxiety disorder, dependent personality disorder, and mild intellectual disability. (Tr. 1287). Ms. Eckelhoff noted that Plaintiff did not need assistance with ADL's; that she did not have much of a social life but spent hours on the phone daily talking to people she met online; she could communicate and interact in a socially adequate manner and communicate in an intelligible and effective manner. Based on the interview and test results, it did not appear that any cognitive impairment would interfere with basic demands of a job. While Plaintiff reported difficulty concentrating, she was able to maintain concentration on the Digit Span portion of the IQ, which was her highest score, and there was no evidence that she could not

complete basic tasks in an acceptable timeframe. (Tr. 1288). Ms. Eckelhoff also reported that Plaintiff had failed the driver's test eight times; she did not go to the store independently; and she lacked self-direction, relying heavily on her parents. (Tr. 1289). Plaintiff's dependent personality disorder hindered her independence and change for personal growth; her test results showed mild intellectual disability; and no evidence of malingering was observed, but Ms. Eckelhoff noted that Plaintiff would give up easily due to her lack of confidence, dependency and anxiety. (Tr. 1289).

On January 12, 2017, Plaintiff returned to Mercy Hospital with complaints of cough and nasal congestion and was treated for sinusitis, as well as an ear infection of the right ear. (Tr. 1384).

Plaintiff received an additional lumbar epidural steroid injection on February 16, 2017. (Tr. 1386).

A February 21, 2017, MRI of Plaintiff's lumbar spine showed moderate, interval improved, central disc protrusion at L4-5 resulting in mild canal stenosis and a small central disc protrusion at L5-S1 and a small broad-based disc bulge at L3-4. (Tr. 1436).

A March 31, 2017, x-ray of Plaintiff's right hip showed normal alignment and some mild degenerative changes of the sacroiliac joint. (Tr. 1298). Her left hip x-ray was normal. (Tr. 1301). Imaging of her right knee also showed no abnormality; however, her left knee imaging showed mild osteoarthritis. (Tr. 1299-1300).

On April 6, 2017, Dr. Jonathan Norcross, a non-examining medical consultant, completed a Physical RFC Assessment wherein he determined that Plaintiff was capable of

performing sedentary work with postural limitations for the DI claim; there was insufficient evidence to rate the CDBD/CDBR as of August 22, 2014.  (Tr. 91, 108, 124).

On April 7, 2017, Dr. Christal Janssen, Psy.D, a non-examining medical consultant, completed a Psychiatric Review Technique and a Mental RFC Assessment and determined Plaintiff was capable of performing SRRT with incidental interpersonal contact and direct/concrete supervision (unskilled) work. (Tr. 88, 93, 105, 110, 121, 126).

Plaintiff arrived at Mercy Hospital on July 18, 2017, with complaints of a sore throat. (Tr. 1390). After examination, she was diagnosed with seasonal allergic rhinitis and given Flonase nasal spray.  (Tr. 1393).

On July 24, 2017, Plaintiff saw Glenda King, APRN, at Mercy Clinic for complaints of amenorrhea, cough, and congestion. (Tr. 1353). Plaintiff had a common cold and the nursed noted her morbid obesity.  (Tr. 1354).

Plaintiff presented at Mercy Clinic on August 30, 2017, with complaints of hypertension and back pain.  (Tr. 1510). An x-ray of Plaintiff's lumbar spine showed moderate, interval improved, central disc protrusion at L4-5 resulting in mild canal stenosis and a small central disc protrusion at L5-S1 and a small broad-based disc bulge at L3-4. (Tr. 1514). Plaintiff was assessed with lumbar canal stenosis, morbid obesity, amenorrhea, obstructive sleep apnea, and chronic midline low back pain with sciatica. (Tr. 1514-1515). Further evaluation and testing of Plaintiff's thyroid was ordered; weight loss was strongly recommended; continued use of CPAP and regular medications was suggested. (Tr. 516). A follow-up ultrasound on Plaintiff's thyroid gland was performed September 8, 2017 and was negative. (Tr. 1439).

Plaintiff returned to Mercy Hospital on October 9, 2017, with complaints of vomiting and abdominal pain in the right upper quadrant. (Tr. 1394).  Tests showed Plaintiff did not have infection and a CT of her abdomen showed no acute abnormalities.  (Tr. 1397, 1441). On November 3, 2017, Plaintiff visited Mercy Clinic with complaints of abdominal pain that had not improved.  (Tr. 1312). Upon examination, she was diagnosed with recurrent biliary colic with ultrasound showing gallstones.  Dr. Christopher Coleman recommended gallstone removal, and on November 30th Plaintiff's gallbladder was removed laparoscopically.  (Tr. 1313, 1331).

On October 30, 2017, Dr. Lucy Sauer, a non-examining medical consultant, completed a Physical RFC Assessment and affirmed the findings of Dr. Norcross of sedentary work with postural limitations and that there was insufficient evidence to rate the CDBD/CDBR claims as of August 22, 2014. (Tr. 145, 164, 181).

On November 1, 2017, Dr. Laurie Clemens, Ph.D., a non-examining medication consultant, performed a Psychiatric Review Technique and a Mental RFC Assessment and affirmed the initial conclusion that there was insufficient evidence to rate the CDBD claims, and that Plaintiff was capable of performing unskilled work for the DI claim.  (Tr. 142, 147, 161, 166, 178, 183).

On November 21, 2017, Plaintiff was treated for bronchitis at Mercy Clinic.  (Tr. 1358-1359).  She was also counseled on tobacco cessation. (Tr. 1360).

On January 17, 2018, Plaintiff was treated at Mercy Clinic for pain in her left leg. Plaintiff reported that she had suffered from bilateral leg pain since surgery and that she had not been exercising and had gained weight since the surgery. (Tr. 1518). She was assessed

with bilateral leg pain and morbid obesity. She was encouraged to look into bariatric surgery before her health worsened to the point that it disqualified her as a candidate for surgery, and she was encouraged to increase her exercise. (Tr. 1519).

On February 10, 2018, Plaintiff arrived at Mercy Emergency Department with a cough, fever, sore throat, and symptoms of an upper respiratory infection. (Tr. 1419). She was treated for acute non-recurrent maxillary sinusitis and discharged. (Tr. 1423).

On May 8, 2018, Plaintiff presented at Mercy Hospital with complaints of right upper quadrant abdominal pain and vomiting, which had worsened over the last few days. (Tr. 1424). Plaintiff reported no inciting event other than recently holding a baby in her arms that kicked her in the abdomen area. She also reported that her urine became dark, and her pain began to worsen after dinner that evening. (Tr. 1424). A CT of her abdomen was normal. (Tr. 1429). Plaintiff's obesity and use of smokeless tobacco was noted. (Tr. 1499). Hospital records indicated markedly elevated liver enzymes with hyperbilirubinemia and some skin hyperpigmentation, indicating possible Wilson's or hepatitis. Plaintiff was transferred to a facility with a higher level of GI/Hepatologic evaluation and care capabilities. (Tr. 1430). Plaintiff was seen at Mercy Hospital in Fort Smith on May 10, 2018, where a MRI showed the following: no gross common bile duct dilation; one image showing a small filling defect within the distal common bile duct although not seen on other imaging and could be a possible artifact; and no evidence of bile duct stone on multiple other images. (Tr. 1454).

On May 15, 2018, Plaintiff went to Mercy Clinic for a post-hospital check-up. (Tr. 1521). Due to her elevated liver enzymes, she was taken off NSAIDS, and she was advised to lose weight and improve her diet due to her fatty liver diagnosis. Plaintiff reported low back pain that day as well. Plaintiff requested pain medication but was referred to pain

management for pain control.   (Tr. 1521).   Plaintiff was assessed with elevated liver enzymes, chronic midline low back pain, morbid obesity, and lumbar disc herniation with radiculopathy.  (Tr. 1525). She was also advised to discontinue tobacco use. (Tr. 1526).

On June 26, 2018, Plaintiff was seen at Mercy Clinic for leg pain in her left calf, a knot in the upper calf region, and pain with walking.  Plaintiff reported her mother's history with blood clots.  (Tr. 1527).  Plaintiff's blood work was within range, so no ultrasound on her calf was necessary.  She was instructed to use moist heat on the area and rest.  (Tr. 1530).

On July 20, 2018, was treated for a rash at Mercy Clinic.  (Tr. 1362).

On August 31, 2018, Plaintiff saw Dr. Ornette Gaines for an evaluation of chronic pain in her low back, left leg, and right leg.  (Tr. 1587). Plaintiff reported that her back pain interfered with her activities of daily living and her ability to do chores around the house. She stated that her pain was sharp, stabbing, and achy at times.  Because of her increased liver enzymes, she was told to stop all NSAIDS, and was needing something for pain management.   (Tr. 1587). Plaintiff's examination showed normal gait; ability to stand without difficulty; normal mood and appropriate affect; normal strength; normal mental examination; and normal range of motion except in lumbar spine.  (Tr. 1589). Plaintiff was assessed with chronic low back pain, leg pain, lumbago, lumbar radiculopathy, and opioid dependence. (Tr. 1590). She was given oxycodone.  (Tr. 1590).

## III.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a

reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

## IV. Discussion:

Plaintiff makes the following arguments on appeal: 1) that the ALJ failed to fully and fairly develop the record; 2) that the ALJ erred in not conducting a proper psychiatric review technique; 3) that the ALJ erred in his RFC Assessment; and 4) that the ALJ erred in failing to properly consider Plaintiff's obesity under SSR 02-1p. (Doc. 11, pp. 1-11).

### A. Full and Fair Development of the Record:

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995). The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). "While an ALJ does have a duty to develop the

record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011).  After reviewing the entire record, the Court finds the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period.  Accordingly, the undersigned finds the ALJ fully and fairly developed the record.

**B.    Plaintiff's Impairments:**

At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. See 20 C.F.R. § 404.1520(c). While "severity is not an onerous requirement for the claimant to meet ... it is also not a toothless standard." Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015) (citations omitted). To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related activities. See Social Security Ruling 96-3p. The claimant has the burden of proof of showing he suffers from a medically-severe impairment at Step Two. See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000).

While the ALJ did not find all of Plaintiff's alleged impairments to be severe impairments, the ALJ specifically discussed the alleged impairments in the decision, and clearly stated that he considered all of Plaintiff's impairments, including the impairments that were found to be non-severe. See Swartz v. Barnhart, 188 F. App'x 361, 368 (6th Cir. 2006) (where ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, any error in failing to identify particular impairment as "severe" at step two is harmless); Elmore v. Astrue, 2012 WL 1085487 *12 (E.D. Mo. March 5, 2012);see also 20 C.F.R. § 416.945(a)(2) (in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments ..., including ... impairments that are not

'severe' "); § 416.923 (ALJ must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").

With regard to Plaintiff's argument that the ALJ erred in failing to evaluate the alleged dependent personality disorder through the PRT, the Court finds that the ALJ adequately discussed Ms. Eckelhoff's evaluation and testing results. The ALJ also considered Ms. Eckelhoff's diagnosis of a dependent personality disorder and her ultimate conclusion that Plaintiff had the ability to perform unskilled work.

Therefore, upon review of the record, the Court finds that the ALJ did not err in setting forth Plaintiff's severe impairments during the relevant time period.

### C.    Subjective Complaints and Symptom Evaluation:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. A review of the

record revealed that in October of 2017, Plaintiff indicated she was able to prepare simple meals with the use of a microwave; to do some light housework, including folding laundry; to care for herself with some assistance; to go grocery shopping with her mother; to ride in a car; to watch television; to spend time with others by sitting and talking to friends in person; and to spend hours on the phone talking to friends and others she met online. (Tr. 390-397, 1288).

With respect to Plaintiff's alleged physical impairments, the record revealed that Plaintiff's back pain, hypertension, and sleep apnea, improved with treatment. Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009) (impairments that are controllable or amenable to treatment do not support a finding of disability). The record also reveals that on occasion Plaintiff did not take her medication as prescribed and failed to follow recommendations by treating physicians to lose weight, follow a proper diet, exercise, and pursue an evaluation for weight-loss surgery. See Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005) (citations omitted) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility.").

With respect to Plaintiff's alleged mental impairments, the record revealed that Plaintiff had not been prescribed medication for any mental health condition, nor had she undergone any mental health treatment, including inpatient, outpatient or continued counseling, during the relevant time period. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against Plaintiff's claim of disability). During Plaintiff's initial and only visit with Ms. Davis, LPC, Ms. Davis recommended individual therapy and pharmacologic management for Plaintiff's depression. However, the medical record shows that Plaintiff did

not comply with such recommendations.  See Brown v. Barnhart, 390 F.3d 535, 540-541 (8th Cir. 2004) (citations omitted) ("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits.").

Although it is clear that Plaintiff suffers with some degree of limitation, she has not established that she is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**D.    RFC Determination:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered the medical assessments of examining and non-examining agency medical consultants, Plaintiff's subjective complaints, and her

medical records when he determined Plaintiff could perform a range of sedentary work with non-exertional limitations during the time period in question. The Court notes that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of examining and non-examining medical professionals and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

Plaintiff alleges the ALJ failed to consider the impact of her obesity when combined with her other severe impairments. (Doc. 11, pp. 8-9). This argument is without merit. First, only one of Plaintiff's treating physicians placed her on light activity due to her back and hip pain. Nothing in the medical record indicates Plaintiff's physicians placed any work restrictions on her due to her obesity that would preclude sedentary work. See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Moreover, the ALJ considered Plaintiff's obesity. (Tr. 18-27). The ALJ found Plaintiff's obesity to be a severe impairment, and when assessing her RFC, the ALJ stated that, "The undersigned has considered the potential impact of obesity in causing or contributing to co-existing impairments as required by Social Security Ruling 02-01p. Accordingly, the claimant's weight, including the impact on her ability to ambulate as well as her other body systems, has been considered within the functional limitations determined herein." (Tr. 27). See Heino v. Astrue, 578 F.3d 873, 881-882 (8th Cir. 2009)

(when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal).

After reviewing the entire transcript, the Court finds substantial evidence supporting the ALJ's RFC determination for the time period in question.

### E.    Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing work as a table worker/inspector, an addresser, and a document preparer during the time period in question. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

## V.    Conclusion:

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.**

DATED this 19th day of May 2020.

/s/ *Erin L. Wiedemann*

HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE